**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| AMY NEWKIRK, individually and on behalf of similarly situated individuals,<br><br>          Plaintiffs,<br><br>     v.<br><br>ELEVANCE HEALTH, INC., f/k/a ANTHEM, INC., ANTHEM HEALTH PLANS OF KENTUCKY, INC.<br><br>          Defendants. | Case No. 1:25-cv-1850<br><br>**FIRST AMENDED COMPLAINT**<br><br>**(CLASS ACTION)**<br><br>**NATIONWIDE RELIEF SOUGHT** |

## I.     PARTIES

1.     ***Plaintiff Amy Newkirk.*** Plaintiff Amy Newkirk is insured under an Elevance Health Inc. subsidiary's health insurance plan through her employment with Newcare of Louisville, LLC in the City of Louisville, Jefferson County, Kentucky.

2.     ***Defendant Elevance Health, Inc. f/k/a Anthem.*** Defendant Elevance Health, Inc. (referred to herein as "Anthem") is a health insurance and coverage company.

3.     Anthem is headquartered in Marion County, Indiana and is engaged in the business of insurance in fourteen states across the country, including Kentucky.

4.     Anthem offers health insurance plans through its subsidiaries and affiliates that it controls. For example, in Kentucky, Anthem designs, issues, and delivers health insurance plans through its subsidiary, Anthem Health Plans of Kentucky, Inc. In addition to Anthem Health Plans of Kentucky, Inc., Anthem operates other wholly owned subsidiaries in other states, including Colorado, Connecticut, Georgia, Indiana, Maine, Missouri, Nevada, New Hampshire, New York, Ohio, Virginia, and Wisconsin.

5.     Through its wholly owned subsidiaries, including Anthem Health Plans of Kentucky Inc., Anthem is in the business of insuring and administering health insurance plans,

most of which are employer-sponsored and governed by ERISA, 29 U.S.C. § 1001 *et seq.* The ERISA-governed health insurance plans through which Anthem conducts its business (including through its wholly-owned subsidiaries) are referred to herein as the "Anthem Plans."

6. Anthem's business relationship with its subsidiaries as it relates to the Anthem Plans is so close as to effectively make Anthem and its subsidiaries a fully integrated enterprise with respect to the Anthem Plans.

7. Specifically, Anthem, along with its affiliates and subsidiaries, is responsible for claims administration for all Anthem Plans, including determining whether claims are covered under Anthem Plans and effectuating any resulting benefit payment. Anthem further supports these claims administration duties with the development of medical policies, prescription drug formularies, coverage guidelines, and other activities.

8. Anthem controls the actions of its subsidiaries and affiliates (such as Anthem KY), including but not limited to the claims processing, physician networks, the activities of its company-wide pharmacy benefit manager, CarelonRx, and appeals procedures. As such, Anthem controls the claims adjudication and formulary management related to prescription drug coverage for all of the Anthem Plans. Accordingly, Anthem acts as an ERISA fiduciary with respect to all Anthem Plans, including that in which Plaintiff is enrolled.

9. Notably, Plaintiff Amy Newkirk's health insurance plan through Anthem, and upon information and belief all Anthem Plans, state: "Throughout this Booklet you will also see references to 'we,' 'us,' 'our,' 'you,' and 'your.' The words 'we,' 'us,' and 'our' mean Anthem Blue Cross and Blue Shield or any of our subsidiaries, affiliates, subcontractors, or designees."

– 2 –

**Exhibit A**, *Anthem Gold Blue Access PPO 1500/20%/6000 Health Plan* (hereinafter "Newkirk's Plan" or "the Plan"), at 9.[1]

10.    And when Anthem changed its name to "Elevance" in June 2022, its provider news update explained:

> **A simpler brand portfolio that makes it easier to do business with us.** We have streamlined and simplified the complexity of our health plan and service businesses and reduced the number of brands we have in the market, so our partners and customers clearly understand where we serve, who we serve, and what our brands do.
>
> **What does this mean for care providers?**
> We will operate as Anthem Blue Cross or Anthem Blue Cross and Blue Shield in our 14 Blue-licensed markets. Our existing Anthem-branded health plans are not changing and will continue to operate in their current states. There will be no impact to plans, coverage, or level of support.

**Exhibit B,** *Introducing Elevance Health — Focusing on whole health and its most powerful drivers*, Anthem Kentucky Provider News, ANTHEM (June 16, 2022), at 3.

11.    ***Defendant Anthem Health Plans of Kentucky, Inc.*** Defendant Anthem Health Plans of Kentucky Inc. (referred to herein as "Anthem KY") is the subsidiary that issued and delivered the Anthem Plan in which Ms. Newkirk is enrolled.

12.    Specifically, Anthem KY issued, delivered, and administered the health insurance coverage for Ms. Newkirk through the Anthem Gold Blue Access PPO 1500/20%/6000 health plan (*see, e.g.*, *Ex. A* at 2, 10, 43–44), and is therefore an ERISA fiduciary.

## II.    JURISDICTION AND VENUE

13.    This Court has jurisdiction pursuant to ERISA § 502(e)(1); 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

---

[1] Pincites refer to the page number assigned by the ECF filing system in the header of each document.

14. Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because, *inter alia,* Defendant Anthem resides or may be found in this District, and its principal place of business is in Indianapolis, which is within this District, and ERISA provides for nationwide service of process.

15. In conformity with 29 U.S.C. § 1132(h), Plaintiff will serve this First Amended Complaint by certified mail on the Secretary of Labor and the Secretary of Treasury.

### III. NATURE OF THE CASE

16. On December 20, 2024, the Food and Drug Administration designated ZEPBOUND® ("Zepbound") as the first and only prescription medication approved to treat moderate to severe Obstructive Sleep Apnea ("OSA"). OSA is a serious medical condition in which an individual's airway becomes blocked while asleep, causing them to awaken, sometimes gasp for air leading to a host of other serious complications including impaired cognitive ability. That is why when two random controlled, double blinded studies showed that Zepbound was effective at reducing apnea events in people diagnosed with moderate to severe OSA, the FDA fast-tracked medication's approval for this purpose.

17. Despite this medical breakthrough, Anthem refuses to cover Zepbound for the treatment of OSA for its enrollees in the Anthem Plans. This does not comply with the terms of the Anthem Plans. Anthem covers prescription drugs that are FDA-approved and prescribed by a licensed provider, when clinically effective at treating a covered medical condition. And Anthem covers and does not exclude treatment for OSA. Under the terms of the Anthem Plans, Zepbound to treat OSA should be covered.

18. Instead, Anthem excludes coverage of Zepbound in the Anthem Plans, even when it is prescribed to treat OSA. Anthem does so by taking the position that the medication is for

"weight loss" and not treatment of OSA. Anthem's denial on this basis violates the terms of its health plans and ERISA requirements.

19.    Plaintiff Amy Newkirk brings this class action lawsuit on behalf of herself and similarly situated enrollees in Anthem Plans insured by Defendant Anthem through its wholly-owned subsidiaries, including Defendant Anthem KY, that categorically exclude all coverage for Zepbound to treat obstructive sleep apnea. Anthem's actions violate the Employee Retirement Income Security Act of 1974 ("ERISA") and the plain terms of the Anthem Plans. Plaintiff additionally challenges Defendants' failure to consider her request for an Exception to the Anthem Formulary and to timely and fully provide all of the documents requested, prelitigation.

### IV.    FACTS

**A.    Defendants Cover Medically Necessary Prescription Medications, Including Those That Treat Obstructive Sleep Apnea.**

20.    Obstructive sleep apnea ("OSA") is a serious sleep disorder in which an individual's upper airway becomes blocked while asleep, which can reduce or completely stop airflow.[2] Among its numerous symptoms and effects, OSA can cause patients to awake gasping or choking, impair cognitive function, increase risk of cardiac problems, such as high blood pressure, heart attack, stroke, and arrhythmias, increase risks of type-2 diabetes, and increase risk of motor vehicle and workplace accidents. Obstructive sleep apnea is "a highly prevalent syndrome that is associated with substantial morbidity and increased mortality."[3]

---

[2] *See generally* Sleep-Related Breathing Disorders, WELLNESS, SLEEP AND CIRCADIAN NETWORK (WSCN), available at https://www.sleephealth.org/sleep-related-breathing-disorders/ (last visited Dec. 8, 2025); *Sleep Apnea*, JOHNS HOPKINS MEDICINE, available at https://www.hopkinsmedicine.org/health/conditions-and-diseases/sleep-apnea (last visited Dec. 8, 2025).

[3] Sigrid C. Veasey, MD, et al., *Medical Therapy for Obstructive Sleep Apnea: A Review by the Medical Therapy for Obstructive Sleep Apnea Task Force of the Standards of Practice Committee of the American Academy of Sleep Medicine*, SLEEP, Vol. 29, No. 8, at 1036–44 (2006), available at https://pubmed.ncbi.nlm.nih.gov/16944672/ (last visited Dec. 8, 2025); *see also* Timothy I. Morgenthaler, MD, et al., *Practice Parameters for the Medical Therapy of Obstructive Sleep Apnea*, SLEEP, Vol. 29, No. 8, at 1031–35 (2006), available at https://pubmed.ncbi.nlm.nih.gov/16944671/ (last visited Dec. 8, 2025).

21. Obstructive sleep apnea is a covered medical condition under the Anthem Plans.

22. Obstructive sleep apnea is not listed as an Exclusion under the Anthem Plans.

23. Zepbound is "an injectable prescription medicine that may help adults with ... moderate to severe obstructive sleep apnea (OSA) and obesity to improve their OSA."[4]

24. Zepbound is approved by the FDA for the treatment of moderate to severe OSA and requires a prescription. Accordingly, it meets the Anthem Plans' definition of "prescription drug."

25. Zepbound is the only medication approved by the FDA to treat OSA.[5] Zepbound has been shown to achieve a significant and clinically meaningful reduction in apnea or hypopnea events in two randomized, double-blind, placebo-controlled studies.[6]

26. Newkirk's Plan covers prescription medications as follows:

> Your Plan also includes benefits for Prescription Drugs you get at a Retail or Mail Order Pharmacy…. To be a Covered Service, Prescription Drugs must be approved by the Food and Drug Administration and, under federal law, require a Prescription. Prescription Drugs must be prescribed by a licensed Provider and you must get them from a Pharmacy.

*Ex. A* at 80–81.

27. Newkirk's Plan maintains prescription drug lists that it claims are based upon "clinical findings." *Id.* at 84. The drug list identifies the medications covered by Newkirk's Plan

---

[4] *Zepbound Medication Guide*, U.S. Food & Drug Administration (Sept. 2025), available at https://pi.lilly.com/us/zepbound-us-mg.pdf (last visited Dec. 8, 2025); *see generally* Zepbound, ELI LILLY https://zepbound.lilly.com (last visited Dec. 8, 2025).

[5] *FDA Approves First Medication for Obstructive Sleep Apnea*, FDA News Release, U.S. Food & Drug Administration (Dec. 20, 2024), https://www.fda.gov/news-events/press-announcements/fda-approves-first-medication-obstructive-sleep-apnea (last visited Dec. 8, 2025).

[6] *See supra* fn. 4.

to treat the same or similar conditions through the Plan to which the particular drug list is assigned. *Id.*

28. Newkirk's Plan recognizes that an enrollee may need a prescription drug that is not on the prescription drug list associated with the enrollee's health plan, and Anthem has established an exception request process for that situation. *Id.*

29. Newkirk's Plan maintains that it will cover other prescription drugs that are not on an enrollee's health plan's prescription drug list if it concludes that the medication is medically necessary and appropriate over other drugs that are on the list. *Id.*; *see also id.* at 81.

30. Based on information and belief, the same or similar prescription drug coverage exists in the other Anthem Plans issued and delivered across the country.

31. Anthem designs, issues, and delivers a series of drug lists ("formularies") for its affiliated health plan customers in order to administer the Anthem prescription drug benefit. *See, e.g.,* **Exhibit C**, *Anthem Select Drug List – Four Tier Drug Plan* ("Anthem Drug List"), at 3.[7]

32. The Anthem Drug List does not include Zepbound. *See generally Ex. C*, Anthem Drug List.

33. No other medication is included in the Anthem Drug List for the treatment of Obstructive Sleep Apnea. *Id.*

---

[7] A drug list that is substantially similar and possibly identical with the Anthem Drug List is available to the public online as the "Kentucky Small Group Four Tier Select Drug List." Available at https://fm.formularynavigator.com/FBO/143/2025_Select_4_Tier_KY_SG.pdf (last visited Dec. 10, 2025).

34.     Other Anthem formularies, including ones assigned to plans marketed in Kentucky, include Zepbound.[8] Such coverage reflects Anthem's determination that Zepbound can be medically necessary.

35.     For example, the Kentucky Three Tier Essential Direct Drug List (hereinafter "Essential Direct Drug List"), another formulary employed by Anthem, includes Zepbound.[9]

36.     Anthem has covered Zepbound in the past and continues to cover it in Anthem's Essential Direct Drug List and other Anthem formularies.[10]

37.     Newkirk's Anthem Plan excludes "Weight Loss Programs," "Weight Loss Surgery," and "Weight Loss Drugs." *Ex. A* at 94, 96.

38.     Based on information and belief, the same or similar exclusion appears in Anthem Plans insured by wholly-owned subsidiaries across the country.

39.     The "Weight Loss Drugs" exclusion is defined to encompass "[a]ny Drug ***mainly used*** for weight loss." *Id.* at  96 (emphasis added).

---

[8] For example, Anthem posts "a summary of our latest drug list changes" on its website, which reflects that Zepbound was included on the National Drug List, National Direct Drug List, National Direct Plus Drug List, National Direct Preferred Drug List, Traditional Open Drug List, Essential Drug List, and the Essential Direct Drug List as of Q2 2025 (and that Anthem made changes to Zepbound's "tier" placement on some of these drug lists in Q3 2025). **Exhibit D**, *Formulary Update* at 12, available at https://www.anthem.com/content/dam/digital/docs/pharmacy-information/unbranded-formulary-update-quarterlyrolling-anthem.pdf, posted as "a summary of our latest drug list changes," available online at *The Prescription Drugs Your Plan Covers*, ANTHEM,  https://www.anthem.com/pharmacy-information/drug-list-formulary (last visited Dec. 5, 2025).

[9] *See* **Exhibit E**, *Anthem Essential Direct Drug List — Three Tier Drug Plan (Excerpts)* at 10, available in full at https://fm.formularynavigator.com/FBO/143/Essential_Direct_3_Tier_ABCBS.pdf (last visited Dec. 8, 2025).

[10] *See Ex. D* at 12; *see also, e.g.*, *Anthem Kentucky Three Tier National Drug List*, at *8, available at https://fm.formularynavigator.com/FBO/143/National_3_Tier_ABCBS.pdf (last visited Dec. 8, 2025); *Anthem Kentucky Four-Tier National Direct Drug List*, at *9, available at https://fm.formularynavigator.com/FBO/143/National_Direct_4_Tier_ABCBS.pdf (last visited Dec. 8, 2025); *Anthem Kentucky Four-Tier Traditional Open Drug List*, at *4, available at https://fm.formularynavigator.com/FBO/143/Traditional_Open_4_Tier_ABCBS.pdf (last visited Dec. 8, 2025).

40.    Defendants exclude all coverage of Zepbound to treat moderate to severe OSA because they have determined, in their discretion, that the medication is "mainly used for weight loss" when it is prescribed to treat OSA.

41.    Defendant Anthem determines whether Anthem enrollees like Ms. Newkirk may have coverage for Zepbound to treat OSA. Defendant Anthem's discretionary determination of whether a medication is covered under the terms of the plan is a fiduciary act under ERISA.

42.    Defendant Anthem's discretionary decision to deny coverage of Zepbound when sought to treat OSA is wrong.

43.    The FDA authorization of Zepbound to treat moderate to severe OSA is a separate and distinct indication and usage from Zepbound's original FDA-approved indication and usage for obesity.

44.    When Zepbound is prescribed to treat obstructive sleep apnea, it is not "mainly used" for weight loss.

45.    Rather, the medication is prescribed as part of a treatment program for obstructive sleep apnea.

46.    While weight loss can be an effect of the medication's use, in this context, the main purpose of the medication is to improve the patient's moderate to severe OSA, a well-documented primary medical condition.

47.    Indeed, as the FDA concluded, Zepbound is a breakthrough in the treatment of moderate to severe OSA.

48.    The approval of the medication was fast-tracked at the FDA because of the significant benefit that the medication delivered to patients with moderate to severe OSA.

49.     After a year of treatment in two randomized, double-blind placebo-controlled studies, participants with moderate to severe OSA who received Zepbound experienced clinically significant reductions in apnea events.

50.     The clinical studies "resulted in a statistically significant reduction in [apnea-hypopnea index (AHI)]," (*i.e.*, the number of times a person stops breathing) and greater proportion of patients "achieved remission or mild non-symptomatic OSA."[11]

51.     By any reasonable measure, Zepbound effectively treats OSA.

52.     Anthem covers other prescription drugs that treat diabetes or cardiac conditions, even though the medications may cause weight loss or ameliorate the diagnosed condition by causing weight loss.

53.     For example, Anthem covers Ozempic and Mounjaro for conditions like type-2 diabetes. *See. e.g., Ex. C* at 24 (Ozempic covered under the Anthem Drug List); *Ex. E* at 11 (Ozempic and Mounjaro covered under the Essential Direct Drug List). These drugs are covered as "incretin mimetic agents."[12] Incretin mimetic agents are a class of drugs approved by the FDA for treatment of type-2 diabetes. Anthem covers these drugs despite the fact that they may cause weight loss.

54.     Notably, tirzepatide is the active ingredient in both Mounjaro and Zepbound. In other words, the same medication is covered by Anthem for treatment of type 2 diabetes, but not for obstructive sleep apnea – despite the fact that the medication may result in weight loss.

---

[11] **Exhibit F**, *Label for New Drug Application (NDA) 217806, Efficacy - New Indication*, at 28–29, Drugs@FDA, U.S. Food & Drug Administration, (Dec. 20, 2024), available at https://www.accessdata.fda.gov/drugsatfda_docs/label/2025/217806Orig1s020lbl.pdf (last visited Dec. 8, 2025).

[12] *See Incretin mimetic drugs for type 2 diabetes*, U.S. Food & Drug Administration (Mar. 2, 2022), https://www.fda.gov/drugs/information-drug-class/incretin-mimetic-drugs-type-2-diabetes (last visited Dec. 8, 2025).

**B.    Anthem has Authority Over and Controls the Prescription Drug Benefits Decisions Across the Anthem Plans and its Subsidiaries.**

55.    The formularies described above and prescription drug coverage determinations are controlled by Anthem, not its state subsidiaries.

56.    As one example, attached is a recent "Key formulary updates: effective January 1, 2025" issued by Anthem that is effective across its many state subsidiaries, including Kentucky. *See* **Exhibit G.**[13] The "Update" indicates that Anthem controls the decision as to whether a particular prescription medication will be covered at all (by inclusion on the relevant drug list), and whether it will be covered for a specific medical condition. *Id.* at 2.

57.    In fact, Anthem's own SEC filings states the following about Anthem's company-wide pharmacy benefits manager, CarelonRx: "CarelonRx markets and offers pharmacy services to our affiliated health plan customers, as well as to external customers outside of the health plans we own. CarelonRx offers a comprehensive portfolio of pharmacy services, which includes all core pharmacy services, such as home delivery and specialty pharmacies, ***claims adjudication, formulary management***, pharmacy networks, rebate administration, a prescription drug database ***and member services***." *See* Elevance Health, Inc. 2024 Form 10-K, at *6, available at https://s202.q4cdn.com/665319960/files/doc_financials/2025/ar/Elevance-Health-2024-10K-color.pdf (emphasis added).

58.    By consolidating these duties as to all Anthem Plans across its subsidiaries, Anthem, through CarelonRx, controls and has authority over the prescription drug coverage decisions for each subsidiary.

---

[13] Anthem provides Provider Updates to its subsidiaries on state-specific websites. Exhibit G is posted at multiple locations, including the Kentucky Provider Updates page. *See, e.g.*, *Key formulary updates: effective January 1, 2025*, Provider News Kentucky, ANTHEM (Jan. 27, 2025), https://providernews.anthem.com/kentucky/articles/key-formulary-updates-effective-january-1-2025-23845 (last visited Dec. 8, 2025).

– 11 –

59. As another example, Anthem itself, through CarelonRx, has explained: "CarelonRx clinicians actively monitor drugs long before they receive Food and Drug Administration (FDA) approval. This early surveillance enables a proactive strategic evaluation throughout the entire drug lifecycle. Rather than waiting for FDA approval, we begin assessing the clinical potential and cost-of-care implications as early as possible,"[14] implying that there is a single pharmacy and therapeutics committee for CarelonRx that applies to Anthem and its subsidiaries as a whole.

60. Indeed, job posting on the Elevance Health website for a staff vice president position at CarelonRx states: "this role leads enterprise-wide efforts to define the future-state pharmacy product offering for all commercial and government lines of business (internal and external)." **Exhibit I**, *Staff VP CarelonRx Product Strategy Job Posting*, at 3, 4 ELEVANCE HEALTH (Nov. 21, 2025).

61. In short, Anthem, through CarelonRx, exercises discretionary authority over the administration of prescription drug coverage for all Anthem Plans and is therefore is a de facto administrator of the Anthem Plans.

## C. Ms. Newkirk Is Prescribed Zepbound to Treat her Moderate Obstructive Sleep Apnea.

62. Ms. Newkirk was first diagnosed with OSA in or around 2005. Ms. Newkirk underwent a sleep study, overseen by Robert Karman, M.D. in 2016, which confirmed this continuing diagnosis of moderate OSA.

63. After being diagnosed with OSA, Ms. Newkirk was prescribed a continuous positive airway pressure (CPAP) machine to treat this condition.

---

[14] **Exhibit H**, *From pipeline to prescription: the formulary development process at CarelonRx*, at 2, CARELON RX (July 23, 2025), available at https://www.carelonrx.com/perspectives/evidence-based-formulary-development-process (last visited Dec. 8, 2025) .

64.     A CPAP machine delivers a continuous stream of air through the user's mouth and/or nose with the aim of keeping the user's airway open while they sleep. It includes a mask that is strapped to the user's face covering the nose or nose and mouth and connected to the machine's motor by a tube through which air is blown into the patient's nose and mouth.

65.     At a later time, Ms. Newkirk was prescribed and made use of a Bilevel Positive Air Pressure machine ("BiPAP").

66.     A BiPAP is similar to a CPAP, except that a BiPAP delivers airflow with two distinct levels of air pressure—a higher pressure for inhalation and a lower pressure for exhalation.[15] By contrast, a CPAP machine delivers a continuous single-pressure stream of air. *Id.* In both cases, the air is delivered through a facemask.[16]

67.     Unfortunately, the CPAP machines have not met and do not meet Ms. Newkirk's clinical needs, causing her a variety of problems. While the devices are intended to facilitate Ms. Newkirk's sleep, in several ways they have the opposite effect.

68.     Ms. Newkirk finds the machines to be uncomfortable, extremely loud and claustrophobic. It also causes her face to break out, and even causes pain due to the pressure of the mask against her face during the night. She has tried a variety of masks and nasal liners to improve the significant discomfort caused by the machines, all to no avail. Even with the machines, she wakes up multiple times every night, has a sore face in the morning, and experiences inadequate sleep.

---

[15] *See BiPAP Machine: Uses, Benefits, Side Effects & Alternatives*, CLEVELAND CLINIC (May 10, 2023), https://my.clevelandclinic.org/health/treatments/24970-bipap (last visited Dec. 8, 2025).

[16] CPAP and BiPAP machines are referred to here collectively as "CPAP" or "CPAP machines," unless a difference between the two types of devices is material to a reference in the Complaint.

69. Ms. Newkirk's lack of sleep stemming from her OSA negatively affects her other diagnosed health conditions.

70. As such, the CPAP machines fail to eliminate or substantially mitigate numerous negative physical, behavioral, and functional consequences of her OSA.

71. On or about March 11, 2025, Ms. Newkirk's treating endocrinologist, Ramana V. Chennubhotla, M.D., recommended that, in addition to using the CPAP machine, Ms. Newkirk should take Zepbound to treat her obstructive sleep apnea.

72. Dr. Chennubhotla attempted to submit an online request to Anthem through its subsidiary pharmacy benefit manager, CarelonRx, to receive prior authorization for coverage of Zepbound to treat Ms. Newkirk's obstructive sleep apnea. However, the online portal would not permit Dr. Chennubhotla to complete their submission of the preauthorization request, instead effectively and promptly denying coverage with the message "[t]his request cannot be processed due to the medication is not covered by the plan."

73. Similarly, in a message sent through Anthem's patient portal and dated March 13, 2025, Anthem stated that the request for prior authorization for Zepbound for Ms. Newkirk had been received by Anthem/CarelonRx's Prior Authorization Department; the message further informed Ms. Newkirk that Anthem was effectively denying coverage, stating: "Upon review, it has been determined that a Prior Authorization cannot be initiated for Zepbound. This medication is not covered by your plan as it is a benefit exclusion." **Exhibit J**, *Anthem CarelonRx Prior Authorization Denial Message*, at 3 (Mar. 13, 2025). Anthem's denial message provided no description of the nature or source of that exclusion or why the coverage Ms. Newkirk sought fell within the exclusion's borders. *Id.*

74.     This message failed to satisfy the requirements of federal law for notices of adverse benefit actions, which must provide "the specific reasons for such denial, written in a manner calculated to be understood by the participant," and the "specific plan provisions on which the determination is based." 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1(g)(1).

75.     On April 7, 2025, Ms. Newkirk's attorney submitted to Anthem a written internal appeal of Anthem's denial of coverage for Zepbound to treat Ms. Newkirk's OSA to Anthem's Grievances and Appeals Department in Atlanta, Georgia.[17] **Exhibit K**, *Appeal Letter*, *Eleanor Hamburger to Anthem Blue Cross Blue Shield*, at 2 (Apr. 7, 2025).

76.     In addition, Ms. Newkirk's appeal letter requested that the letter be considered a Non-Formulary Exception Request under federal law (29 CFR § 2560.503-1(b)(1); 29 CFR § 2560.503-1(h)(2)(iv); 45 C.F.R. § 156.122 (c)) and under the Anthem Plan. *See Ex. A* at 84, *Ex. K* at 2–4.

77.     The same letter also requested that Anthem provide her with copies of her internal appeals file documents, as required under the Anthem Plan's language and federal law. *See Ex. K* at 2, 4 (citing 29 U.S.C. §§ 1024, 1132 (c)(1); 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8); 45 C.F.R. § 156.122(a), (c)).

78.     By letter dated April 17, 2025, Ms. Newkirk received an acknowledgment letter from Anthem's Grievances and Appeals Department. The letter stated that if Anthem needed more information, Anthem would contact Ms. Newkirk or her doctor.

79.     By letter dated May 9, 2025, and received by Newkirk's counsel on May 19, 2025, Anthem denied the appeal, offering only the following explanation of the denial:

---

[17] Most of the Exhibits to the Appeal Letter are separately attached to this Complaint as Exhibits to the Complaint. Accordingly, for brevity, we attach the Appeal Letter without the Exhibits that accompanied it when it was sent to Anthem. Although Defendant already has these documents in its possession, Plaintiff will provide copies of the Appeal Letter's Exhibits to Defendant, should they so request.

– 15 –

ZEPBOUND 2.5/0.5 PEN is a weight loss drug. Based on the information we have, your doctor prescribed it to help you lose weight. Your health plan doesn't cover any services, supplies, devices or prescription drugs for weight loss. The request is denied. This decision is based on the guidelines found in your Certificate of Coverage Anthem Gold BlueAccess PPO 1500/20%/6000, effective 02/02/2025, page 94, section "What's Not Covered Under Your Prescription Drug Retail or Home Delivery (Mail Order) Pharmacy Benefit", # 33 Weight Loss Drugs. These guidelines can also be found at www.anthem.com.

**Exhibit L**, *Anthem First Level Appeal Denial Letter*, at 2–3 (dated May 9, 2025, received May 19, 2025).

80.     But the information and documents that Ms. Newkirk provided to Anthem in her internal appeal clearly establish that Ms. Newkirk's doctor prescribed Zepbound to treat multiple diagnoses, including Ms. Newkirk's OSA.

81.     Despite evidence that Ms. Newkirk was prescribed Zepbound for the treatment of OSA, Anthem never requested additional information regarding Ms. Newkirk's OSA diagnosis or investigated whether Zepbound is medically necessary and clinically appropriate to treat Ms. Newkirk's OSA.

82.     Anthem's Denial Letter did not address why it denied Zepbound prescribed to treat Ms. Newkirk's moderate obstructive sleep apnea. *See generally Ex. L.*

83.     Nor did Anthem treat Newkirk's appeal as a non-formulary exception request or explain why it did not do so. *Id.*

84.     In addition, Anthem did not fully and timely respond to Ms. Newkirk's requests for her internal administrative records nor to the requests for other information related to Anthem's review of Zepbound to treat obstructive sleep apnea, if any. *See Ex. K* at 4.

85.     On July 1, 2025, Ms. Newkirk's counsel sent another letter to Anthem identifying that Anthem had failed to respond to the document request in Ms. Newkirk's appeal letter, and

renewing the document request. **Exhibit M**, *Follow-up Records Request Letter*, *Daniel Gross to Anthem*, at 2–3 (July 1, 2025).

86.    Accompanying a letter dated August 6, 2025, and processed by Newkirk's counsel's office on or around August 18, Anthem provided copies of what they indicated was

> the complete appeal file for APPT-COMM-4395541; for the denial of proposed prescription for ZEPBOUND. Enclosed you will find copies of the appeal letter received, acknowledgement letter and the case decision pertaining to the previous decision case.

**Exhibit N**, *Anthem Records Letter*, *Aimee G. (Anthem) to Eleanor Hamburger*, at 2 (Aug. 6, 2025). To clarify, in addition to the letter itself, the packet attached to the letter is comprised of:

(a)    Newkirk's Counsel's April 7, 2025 Appeal Letter and the Appeal Letter's five attachments, which included the Certificate of Coverage for the Anthem Plan;

(b)    Anthem's letter to Newkirk dated April 17, 2025, acknowledging receipt of Ms. Hamburger's appeal letter and stating that Anthem received the appeal letter on April 15, 2025;

(c)    A second copy of the Certificate of Coverage for the Anthem Plan; and

(d)    Anthem's May 9, 2025 Decision Letter denying Newkirk's April 7 internal appeal.

87.    The letter did not include a copy of the request for preauthorization of Zepbound submitted to Anthem by Dr. Chennubhotla.

88.    Anthem has not responded to the requests for any other documents explicitly requested in either Newkirk's counsel's April 7, 2025 appeal letter (*Ex. K* at 4) or counsel's follow-up letter of July 1, 2025 (*Ex. M* at 2–4). Such documents include but are not necessarily limited to:

(a)    all documents considered or relied upon in any way by Anthem and/or its agent CarelonRx related to the denial of Ms. Newkirk's pre-authorization request for coverage of Zepbound to treat obstructive sleep apnea and her appeal and subsequent denial thereof – 29 U.S.C. §§ 1024, 1132 (c)(1); 29 C.F.R. § 2560.503-1(h)(2)(iii), (m)(8);

(b)    documents related to Anthem's contention that its exclusion of Zepbound for the treatment of sleep apnea complies with the Affordable Care Act;

(c)    any written documentation of the rationale by the Anthem pharmacy and therapeutics (P&T) committee related to coverage or exclusion of Zepbound for sleep apnea (*see e.g.,* 45 C.F.R. § 156.122(a)(3)(ii)(B));

(d)    any and all reviews or analyses related to Zepbound for obstructive sleep apnea, consistent with 45 C.F.R. § 156.122(a)(3)(iii);

(e)    any and all information on exceptions approved or granted to Anthem's exclusion of Zepbound for obstructive sleep apnea under 45 C.F.R. § 156.122(c), with all PHI redacted; and,

(f)    Anthem has indicated that "[f]actors like effectiveness, side effects and cost" were considered when deciding to exclude Zepbound to treat obstructive sleep apnea from coverage. *Ex. J* at 2. Anthem's analysis of the efficacy, side effects and cost must be disclosed.

89.    Administrative exhaustion is futile in light of the Anthem Plan's language, Anthem's written statements, and Anthem's complete failure to meaningfully engage with Ms. Newkirk both to Ms. Newkirk's initial request for coverage for Zepbound to treat her moderate OSA, and on appeal. Any attempt by proposed class members to pursue administrative remedies would also be futile.

90. Nonetheless, Ms. Newkirk completed the internal appeals process within Anthem to no avail. Ms. Newkirk. has exhausted her administrative remedies. *Ex. L* at 3 ("This is our [Anthem's] final decision. Your appeal rights with us are exhausted.").

**D.  Classwide Factual Allegations**

91. During certain time periods on and after December 20, 2024, Plaintiff Newkirk and members of the class have been, are or will be participants or beneficiaries in Anthem Plans, all of which are (1) insured by Anthem's wholly-owned subsidiaries; (2) are subject to ERISA pursuant to 29 U.S.C. § 1003 and (3) deny all coverage for Zepbound when sought to treat moderate to severe obstructive sleep apnea.

92. On or after December 20, 2024, and continuing to the present, Ms. Newkirk and members of the class have been prescribed Zepbound to treat their diagnoses of moderate to severe obstructive sleep apnea. In other words, they require Zepbound to treat their OSA.

93. Despite the FDA approval of Zepbound to treat moderate to severe OSA, and having a prescription from a licensed provider for treatment of OSA with Zepbound, Ms. Newkirk and all class members have been denied coverage of such treatment under the "Weight Loss Drug" exclusion, or their providers' attempts to submit a claim for such coverage has been rejected by Anthem without a formal denial.

94. Based on information and belief, Ms. Newkirk and class members have been and will continue to be denied coverage of Zepbound to treat OSA, often without a formal denial letter, or notice of their right to request an exception and their right to appeal the denial.

95. As a result, Ms. Newkirk and class members paid for medications out-of-pocket. Class members have also been forced to forgo needed prescription drug treatment for their OSA.

## V.    CLASS ALLEGATIONS

96.    ***Definition of Class.*** Ms. Newkirk proposes certification of the following class:

All individuals who:

1) have been, are, or will be participants or beneficiaries in an ERISA "group health plan" (as defined in 29 U.S.C. § 1167(1)) that was and/or is insured by Anthem (including its subsidiaries and affiliates); and

2) their Anthem health plan denies all coverage of Zepbound to treat obstructive sleep apnea; and

3) while enrolled, required or require Zepbound for the purpose of treating obstructive sleep apnea from December 20, 2024 to the present.

97.    The proposed class meets the requirements under Fed. R. Civ. P. 23(a) for class certification.

98.    ***Numerosity of Class.*** Based on information and belief, the members of the class defined above are in the hundreds if not thousands and are so numerous that joinder of all members is impractical.

99.    ***Common Questions of Law and Fact.*** Common questions of law and fact exist as to all class members and predominate over any questions solely affecting individual class members. The overarching common question is whether Defendants Anthem and Anthem KY violated the plan terms and ERISA by categorically denying coverage of Zepbound when sought to treat obstructive sleep apnea. Additional common questions include, but are not limited to, whether Defendants violated the plan terms and ERISA by categorically refusing to consider requests for coverage of Zepbound to treat obstructive sleep apnea under the non-formulary exception process and what the proper form of equitable and injunctive relief to address this unlawful conduct should be.

100.    *Typicality.* Plaintiff's claims are typical of the class members' claims. Like all other class members, Plaintiff has been denied a covered benefit and denied a full and fair review as a result of Defendants' misconduct. Defendants' imprudent decisions and blanket denial of coverage of Zepbound to treat obstructive sleep apnea has affected all class members similarly.

101.    ***Adequacy of Class Representation.*** Plaintiff Newkirk will fairly and adequately protect the interests of the class. Plaintiff's interests are aligned with that of the class she seeks to represent, and she has retained counsel experience in complex class action litigation, including ERISA litigation. Plaintiff does not have any conflicts of interest with any class members that would impair or impede her ability to represent such class members.

102.    ***Separate Suits Would Create Risk of Varying Conduct Requirements.*** The prosecution of separate actions by class members against Anthem and Anthem KY would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct in enforcing the terms of the Plan. Certification is therefore proper under Fed. R. Civ. P. 23(b)(1).

103.    ***Anthem and Anthem KY Have Acted on Grounds Generally Applicable to the Class.*** By arbitrarily denying coverage of Zepbound to treat OSA, despite its coverage under the plain terms of the Anthem Plans, and by categorically refusing to consider requests for coverage of Zepbound to treat obstructive sleep apnea under the non-formulary exception process, Defendants have acted on grounds generally applicable to the class, rendering declaratory relief appropriate respecting the entire class for the particular claim. Certification is therefore proper under Fed. R. Civ. P. 23(b)(2).

104.    ***Alternatively, Questions of Law and Fact Common to the Class Predominate Over Individual Issues.*** The claims of individual class members are more efficiently adjudicated

– 21 –

on a class-wide basis. Any interest that individual members have in individually controlling the prosecution of separate actions is outweighed by the efficiency, in time and cost, of the class mechanism. Upon information and belief, no class action suit has been filed against Defendants for the relief requested in this action for the same or similar class. Issues as to Defendants conduct in applying standard contract provisions towards all class members predominate over any questions unique to members of the class. Certification is therefore also proper under Fed. R. Civ. P. 23(b)(3) in the alternative.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM:
### CLAIM FOR RECOVERY OF BENEFITS, CLARIFICATION OF RIGHTS UNDER THE TERMS OF THE ANTHEM PLAN
### ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

**(On behalf of Ms. Newkirk and the proposed class against both Defendants)**

105. Plaintiff re-alleges all paragraphs above.

106. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant or beneficiary may bring an action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

107. Ms. Newkirk and the putative class are entitled to clarification and a declaration of rights to coverage of Zepbound when prescribed to treat Obstructive Sleep Apnea without the imposition of Anthem's Weight Loss Drug exclusion and/or under the Non-Formulary Exception Request process.

108. Ms. Newkirk and the putative class are entitled to payment of benefits wrongfully denied as a result of Anthem's failure to comply with the terms of its Plans and relevant federal law.

109.    Ms. Newkirk and the putative class also seek equitable relief to recover benefits due them, in the form of a retrospective injunction requiring Anthem to reprocess Plaintiff Newkirk's and class members' claims for Zepbound to treat OSA and to process other claims for such services incurred by class members during the class period, as well as equitable tolling of claim and appeal deadlines for requesting authorization or coverage of such services and appealing denials of such authorizations or coverage requests, and any applicable statute of limitations.

### SECOND CLAIM:
### CLAIM TO OBTAIN OTHER EQUITABLE RELIEF AND TO ENFORCE THE TERMS OF THE PLANS
### ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)

**(on behalf of Ms. Newkirk and the proposed class against all Defendants)**

110.    Plaintiff re-alleges all paragraphs above.

111.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a participant or beneficiary may "enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." Ms. Newkirk and the class seek corrective notice provided by Anthem, equitable tolling and processing or reprocessing of all claims for coverage of Zepbound to treat Obstructive Sleep Apnea incurred by class members during the class period without application of the Weight Loss Drug exclusion.

112.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), further provides that a participant or beneficiary may obtain other appropriate equitable relief to redress violations of ERISA or enforce plan terms. To the extent full relief is not available under ERISA § 502(a)(1)(b), 29 U.S.C. § 1132(a)(1)(B) or ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), then Ms. Newkirk and the class seek equitable remedies including, without limitation, unjust enrichment, disgorgement, restitution, estoppel, and surcharge arising out of the failure to properly administer the terms of the Plans.

**THIRD CLAIM:**
**VIOLATION OF ERISA DISCLOSURE REQUIREMENTS**
**ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(a)**

**(on behalf of Ms. Newkirk individually against both Defendants)**

113.    Plaintiff realleges all the paragraphs above.

114.    Plaintiff seeks sanctions for up to $110 per day for Defendants' failure to produce or ensure the production of Ms. Newkirk's complete claims file and all "other instruments under which the plan is established or operated" as requested in her appeal letter and follow-up letter reiterating the request. *See, e.g., supra* ¶¶ 75, 77, 84–88; *Ex. K*; *Ex. M*; 29 U.S.C. § 1024(b)(4); 29 C.F.R. § 2520.104b-1; 29 C.F.R. § 2575.502c-1.

## VII.    REQUEST FOR RELIEF

115.    WHEREFORE, Ms. Newkirk requests that this Court provide the following relief:

(a)    Certify this case as a class action with the National Class and Kentucky Subclass defined stated above, designate named Plaintiff Amy Newkirk as class representative in both the Class and Subclass; and designate SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC, Eleanor Hamburger, and Richard E. Spoonemore, as well as NICHOLS KASTER PLLP, Anna P. Prakash, Brock J. Specht, and Patricia C. Dana; and SAEED & LITTLE LLP, Jonathan Little, as class counsel;

(b)    Declare that Defendants' denial of all coverage of Zepbound to treat Obstructive Sleep Apnea, as described above, violates the Plan terms and ERISA;

(c)    Enter a prospective injunction forbidding Defendants from denying coverage of Zepbound to treat Obstructive Sleep Apnea under its "Weight Loss Drug" exclusion;

(d)    Clarify and Order the benefits wrongfully denied to members of the Class;

(e)    Order corrective notice, equitable tolling and retrospective injunctive relief through which Defendant Anthem will review claims for Zepbound coverage during the class

period processed or reprocessed without the applying the "Weight Loss Drug" exclusion to Zepbound to treat OSA at to the National Class;

(f)    Award Ms. Newkirk up to $110 a day for Defendant's failure to timely and fully provide her with the requested administrative claim records and failure to provide "other instruments under which the plan is established or operated" as requested in her appeal letter (*Ex. K*) and her counsel's follow-up letter (*Ex. M*).

(g)    Enter judgment in favor of Plaintiff Newkirk and the classes due to Defendants' failure to provide benefits due under the Plan and in favor of Plaintiff Newkirk individually due to Defendant's failure to provide her with requested administrative claim records and "other instruments under which the plan is established or operated" as requested in her appeal letter;

(h)    Award Plaintiff and the classes their attorney fees and costs under ERISA § 502(g), 29 U.S.C. § 1132(g);

(i)    Award Plaintiff and the class payment of pre-judgment and post-judgment interest, as permitted under ERISA; and

(j)    Award such other relief as the court deems just and equitable.


DATED this 8th day of December, 2025.

**NICHOLS KASTER, PLLP**

s/Anna Prakash
Brock J. Specht, MN Bar No. 0388343*
Anna Prakash, MN Bar No. 035162*
Patricia C. Dana, MN Bar No. 0400803*
80 S. Eighth Street, Suite 4700
Minneapolis, MN 55402
Telephone: 612-256-3200
Facsimile: 612-338-4878

– 25 –

bspecht@nka.com
aprakash@nka.com
pdana@nka.com

**SIRIANNI YOUTZ
SPOONEMORE HAMBURGER PLLC**
Eleanor Hamburger, WSBA No. 26478*
Richard E. Spoonemore, WSBA No. 21833*
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
ehamburger@sylaw.com
rspoonemore@sylaw.com

**SAEED & LITTLE LLP**
Jonathan Little (#27421-49)
#189 133 West Market Street
Indianapolis, IN 46204
Tel. (812) 320-3367
jon@sllawfirm.com

*\* Admitted pro hac vice*

**Attorneys for Plaintiff**