**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| AMY NEWKIRK, individually and on behalf of similarly situated individuals,<br><br>        Plaintiff,<br><br>    v.<br><br>ELEVANCE HEALTH, INC., f/k/a ANTHEM, INC., ANTHEM HEALTH PLANS OF KENTUCKY, INC.<br><br>        Defendants. | Case No. 1:25-cv-01850-MPB-MKK |

**STIPULATION AND ESI PROTOCOL**

To streamline discovery and promote the "just and prompt consideration and determination of all the business" before the Court, as required by Rule 1 of the Federal Rules of Civil Procedure, the parties hereby stipulate to the following Protocol governing the discovery of documents and electronically stored information ("ESI") in this matter:

## I.    GENERAL PROVISIONS

### A.    Cooperation

The parties agree that they will adhere to the principles of cooperation, transparency, reasonableness, and proportionality as they conduct discovery in the litigation. This ESI Protocol outlines an iterative process by which the parties will cooperate to coordinate the identification, collection, and production of responsive, non-privileged[1] ESI throughout the discovery process. To the extent reasonably practicable, the production of documents shall be conducted to maximize efficiency and minimize discovery costs. The terms of this Protocol shall be construed so as to

---

[1] As used in this Protocol, "Privilege" or "Privileged" refers broadly to the attorney-client privilege, the work product protection, or any other legal privilege or protection against disclosure of discovery that may be asserted by a party.

1

facilitate the prompt, efficient, and cost-effective exchange of information. Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Producing Party or the Party requesting the documents or ESI ("Requesting Party"). To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

### B.    Limitations and Non-Waiver

The Parties and their attorneys do not intend by establishing and complying with this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege or the attorney work product doctrine. All Parties preserve their attorney-client, attorney work product, and other privileges and protections, and there is no intent by the Protocol to in any way waive or weaken these privileges and protections. All documents produced hereunder are fully protected and covered by any protective orders entered by the Court in this matter.

### C.    Discoverability and Admissibility

Nothing in this Protocol shall be construed to affect the relevance, discoverability, or admissibility of any document or data. All objections, including but not limited to the discoverability or admissibility of any document or data are preserved and may be asserted at any time to the extent consistent with applicable rules of evidence and civil procedure and court orders.

This Protocol does not imply that discovery produced under these terms is properly discoverable, relevant, or admissible in this or in any other litigation or proceeding.

Additionally, nothing in this Protocol shall be deemed to waive or limit any Party's right to object to the production of certain electronically stored information, or to move for an appropriate order on the grounds that the sources are not reasonably accessible.

**D.      Modification**

In light of the varying and disparate data systems and architectures employed by the Parties, to the extent compliance with this Protocol imposes an undue burden, the Parties shall promptly confer in an effort to resolve the issue. Any practice or procedure set forth in this Protocol may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data. Any Party that seeks to deviate from or exceed the limits of this Protocol must obtain leave of the Court to do so unless all Parties consent in writing.

**E.      Dispute Resolution**

If the parties need to meet and confer to resolve ESI discovery issues, attendees will be (a) familiar with the party's technologists, electronic systems, and capabilities and able to explain those systems and answer relevant questions; (b) knowledgeable about the technical aspects of e-discovery, including electronic document storage, organization, and format issues; (c) prepared to participate in e-discovery dispute resolutions; and (d) current on the party's ESI discovery efforts so s/he is able to meaningful contribute to the discussions.

**F.      Court Assistance**

The parties agreed to the above process with the hopes of streamlining discovery efforts and to avoid unnecessary delays and disputes through cooperation and collaboration. The parties will attempt to resolve disputes regarding compliance with the Protocol prior to filing a motion with the Court or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort the parties may seek any necessary relief from the Court. The parties also acknowledge that they may agree upon addenda to this agreement to the extent necessary to handle testing, validation, and other ESI issues that may arise.

**G.      Non-Party Documents**

A Party that issues a subpoena upon any non-party ("Issuing Party") shall include a copy of this Order and any Order governing the protection of confidential material agreed to and/or entered in this litigation with the subpoena and state that the Parties in this litigation have requested that non-parties produce documents in accordance with the specifications set forth in this Protocol, to the extent reasonably feasible. The Issuing Party shall promptly produce to all non-issuing parties a copy of any Documents and ESI (including any metadata) obtained to by non-party in accordance with the Federal Rules of Civil Procedure and subject to all the procedures and protections set forth in any protective order agreed and/or entered in this litigation, or by other stipulation by the parties and Issuing Party.

**II.      IDENTIFICATION OF RESPONSIVE DOCUMENTS AND ESI**

**A.      Disclosure of Likely Data Sources**

**1.      Custodians**

Within 45 days of receiving document requests, the producing party will disclose a list of proposed custodians most likely to possess relevant information. Custodians shall be identified by name, title, and relevant date range.

If any party proposes any modifications to the proposed custodians or subsequently identifies additional custodians or custodial data sources that are likely to possess potentially relevant information during the discovery process, the parties will meet and confer.

4

### 2.    Non-Custodial Data Sources

Within 45 days of receiving document requests, the producing party shall disclose a list of non-custodial data sources (*e.g.*, shared drives, servers, company intranet sites, etc.) likely to contain ESI potentially responsive to the requests. If any party subsequently identifies additional non-custodial data sources that are likely to possess potentially relevant information during the discovery process, the parties will meet and confer.

### B.    Disclosure of Search Methodologies

The parties understand that the correct search methodology or methodologies for one party, type of ESI, source of ESI, or date range of ESI may not be correct for all parties, ESI types/sources, or date ranges and that the producing party is best situated to evaluate the procedures, methodologies, and technologies appropriate for producing its own electronically stored information. As such, a Party may use search terms, other objective delimiters, and/or technology-assisted review technologies as a means of limiting the volume of documents and ESI to be reviewed for responsiveness provided that the means for limiting the volume of documents is disclosed to the requesting party.

Within 45 days of receiving document requests, the producing party shall disclose the search methodology(ies) it intends to use.

If requested within 7 days of disclosure, or at a later time if agreed to by the parties, the parties will engage in a meet and confer process regarding any disputed methodologies. The parties shall work cooperatively to reach an agreement on appropriate parameters, including search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies ("CAL/TAR"), before any such effort is undertaken.

### C. Identification of Responsive Documents

The producing party has ultimate responsibility for complying with that party's discovery obligations to identify and locate relevant and responsive ESI.

An agreement upon the ESI sources to be searched and/or search methodologies does not alleviate a producing party's burden to produce known responsive information. Known responsive documents, whether custodial or non-custodial in nature, will be produced consistent with the applicable rules of civil procedure.

## III. PRODUCTION PROTOCOL

### A. Format

The parties agree that ESI will be produced in accordance with **Exhibit A**, attached hereto, unless otherwise agreed to by the parties.

### B. Deduplication

The parties may de-duplicate ESI productions across custodial and non-custodial data sources based on exact duplicates (MD5 or SHA-1 hash values). De-duplication should take place at the family level only; attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also exact duplicates.

### C. Threading

To reduce unnecessary volume in the review of e-mails, the parties may utilize email threading for its review, but the parties will produce unthreaded emails and their attachments.

**D.    Hyperlinked Files**

The producing party shall make good faith efforts to ascertain whether its proposed custodians routinely use links to cloud-based documents in their communications to ensure the preservation of, as well as the potential future efficient collection of, contemporaneously linked documents (i.e., the version of the hyperlinked document that existed when the source document was created).

The producing party shall promptly advise the requesting party if the producing party is unable to maintain document relationships and/or produce contemporaneous versions of documents hyperlinked within the producing party's production.

The producing party is not required to produce hyperlinked files or documents as part of the same Document Family production as the document containing the hyperlink, provided that upon a reasonable and particularized request, the Producing party will produce or identify such files or documents. In responding to such a request, the producing party is obligated to produce relevant, nonprivileged documents and shall minimize any argument relying on technical burdens associated with said production.

**E.    Production Timing and Rolling Productions**

The producing party shall review and produce responsive non-privileged documents yielded from the employed search methodologies and set a date certain for the completion of production.

**F.    Privilege Logs**

**1.    Privilege Log Exclusions**

The Parties agree that the following categories of responsive documents or ESI need not be listed on a privilege log.

### a.    Communications with Counsel

The Parties agree that no Party is required to list on a privilege log communications that occurred (or occur) after the date this lawsuit was filed between a Party and its in-house counsel, outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to any information protected by Fed. R. Civ. P. 26(b)(4).

### b.    Work-Product

The Parties agree that no Party is required to list on a privilege log privileged materials or work product created or received after the date this lawsuit was filed by its in-house counsel, outside counsel, an agent of outside counsel other than the Party, any non-testifying experts, or with respect to any information protected by Fed. R. Civ. P. 26(b)(4). This provision extends to the attachments of privileged or work product emails.

### 2.    Privilege Log Format and Production

Parties shall generate a listing of all withheld or redacted documents and ESI, subject to the exceptions outlined above in Section III.F.1., in electronic spreadsheet format in compliance with Fed. R. Civ. P. 26(b)(5). The producing party will produce a privilege log within 14 days of its corresponding production.

So stipulated on February 9, 2026 by:

*/s/ Patricia C. Dana*
**NICHOLS KASTER, PLLP**
Anna Prakash*
Brock J. Specht*
Patricia C. Dana*
80 S. Eighth Street, Suite 4700
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 338-4878
aprakash@nka.com
bspecht@nka.com
pdana@nka.com

**SIRIANNI YOUTZ SPOONEMORE HAMBURGER PLLC**
Eleanor Hamburger*
Richard E. Spoonemore*
3101 Western Avenue, Suite 350
Seattle, WA 98121
Tel. (206) 223-0303
ehamburger@sylaw.com
rspoonemore@sylaw.com

**SAEED & LITTLE LLP**
Jonathan Little (#27421-49)
#189 133 West Market Street
Indianapolis, IN 46204
Tel. (812) 320-3367
jon@sllawfirm.com

*\* Admitted pro hac vice*
*Counsel for Plaintiff and the proposed Class*

*/s/ Darren A. Craig*
**FBT GIBBONS LLP**
Kandi Kilkelly Hidde, #18033-49
Darren A. Craig, #25534-49
Patricia Román Hass, #29461-46
Katherine M. Slisz, #36317-49
111 Monument Circle, Suite 4500
P.O. Box 44961
Indianapolis, IN 46244-0961
Telephone: (317) 237-3800
Facsimile: (317) 237-3900
khidde@fbtgibbons.com
dcraig@fbtgibbons.com
promanhass@fbtgibbons.com
kslisz@fbtgibbons.com

*Counsel for Defendants*

 

**APPROVED** as amended and so **ORDERED.**

Date: 04/14/2026

M. Kendra Klump
United States Magistrate Judge
Southern District of Indiana

9

**Exhibit A - Format for the Production of Documents
Including Electronically Stored Information**

Federal Rule of Civil Procedure 34(b)(1)(C) provides that a party requesting documents "may specify the form or forms in which electronically stored information is to be produced." Pursuant to Rule 34(b)(1)(C), documents and Electronically Stored Information ("ESI") should be produced in the forms described below.

### A.    Production Formats

As a general rule, the production format for all paper documents and ESI shall be single-page Group IV TIFF files with corresponding text and load files, as set forth in detail in Part C below ("the Default Rule"). All hidden items (track changes, comments, notes, mark-ups) shall be expanded and rendered in images.

However, spreadsheets, presentation files, digital images, audio/video files, and other file types that do not render to image well should be produced in their Native format ("Native Productions"). Native Productions shall be produced as they are maintained, with all formulas, redlines, comments, links, and metadata intact. Native Productions should include all ESI metadata fields set forth below in the load file.

It may sometimes be appropriate to produce partial or exported data, such as with information housed in applications, mobile devices, cloud services, social media sites, or databases containing more information than is relevant to the case. In these instances, the parties should confer and agree on an ESI protocol early on concerning scope, methodology, and format for extracting and producing the relevant data.

### B.    Handling of Paper Documents

Paper documents shall be scanned and produced according to the Default Rule. The documents should be unitized (not merged into a single record). The load file for paper documents shall contain the following fields, described in Section C.3 below:

| | |
|---|---|
| BegBates | ProdVolume |
| EndBates | Record Type |
| BegAttach | Confidential |
| EndAttach | Redacted |
| Custodian | Extracted Text |
| Pgcount | |

Exhibit A – Page 1

**C.      Default Rule: Specific Protocols for the Form of Production**

The following specific protocols should be used for productions:

**1.      Images**

A placeholder image that conforms to the TIFF specifications detailed below should be provided for Native Productions. The placeholder should contain the confidential designation, Bates number, and text stating that the document has been produced in native format.

Records not provided in native format should be as single-page, Group IV, 300 DPI, 1-bit, black-and-white TIFF images. If color is requested or necessary to understand the meaning of a document[2], the document should be produced as a single-page, 300 DPI, minimum quality level of 75, 24-bit color JPG images. An Images folder on the production deliverable should contain a separate TIFF or JPG file named with the corresponding Bates number. Images should show all information visible using native software. For example, images of email messages should include the BCC and Attachments lines.

**2.      Load Files**

| Load File | Format |
|---|---|
| Image Load File | Opticon .opt |
| Database Load File | Delimited .dat with field header information on the first line of the file. Concordance default delimiters should be used. |

**3.      Metadata Fields**

The Parties are not required to create or manually populate metadata fields that:
(1) do not exist in the ordinary course of business;
(2) are not embedded in, or otherwise associated with, the source data; or
(3) cannot be extracted or derived through standard processing of the ESI.

The Parties are also not required to extract or derive metadata where doing so would be disproportionate to the needs of the case under Federal Rule of Civil Procedure 26(b)(1).

If the Receiving Party identifies a metadata field that appears incomplete or missing, it may request that the Producing Party confirm whether the field exists in the source data and is reasonably accessible through standard processing. The Parties shall meet and confer in good faith regarding any such inquiries.

---

[2] If a producing Party may rely on a color version of a document it produces, the color version will be provided. In addition, a receiving Party may request a color replacement of an image when the loss of color detracts from the usability or limits the ability to interpret information.

Exhibit A – Page 2

To the extent they are reasonably accessible, can be extracted or derived through standard processing, and contain non privileged information, the Parties shall provide the following metadata fields associated with each document produced:

| Field Name | Description |
|---|---|
| BegBates | First Bates number |
| EndBates | Last Bates number |
| BegBatesAttach | First Bates number of the first document of a family |
| EndBatesAttach | Last Bates number of the last document of a family |
| Custodian[3] | Custodian of a file when collected |
| PgCount | Number of pages of a document |
| ProdVolume | Name of an export volume |
| RecordType | Indicates type of ESI ("E-Mail", "E-Mail Attachment", "E-Doc", etc.) or "Hard Copy" for paper documents |
| Filesize | Size in bytes of the native file |
| MD5HashValue | MD5 hash value assigned to a document |
| ExtractedText | Relative file path to the produced extracted text or OCR file of the document. A Text folder on the production deliverable should contain a separate text file for each document named with the corresponding BegBates. If a party OCRs documents for its own benefit, that OCR will be provided here. OCR text files shall be provided for documents with redactions. |
| Confidential | Populated for all documents with a confidentiality designation pursuant to any applicable Protective Order in addition to stamping of production images |
| Redacted | "Has Redactions" or "Yes" populated for all redacted documents |
| FileName | Original file name of a document |
| NativePath | Relative file path to the produced native file. A Natives folder on the production deliverable should contain a separate native file for each document named with the corresponding BegBates. |
| Title | Extracted title of a non-email document |
| Author | Extracted author of a non-email document |
| TimeZone | Time zone used for processing the data |
| Date/Time Created | Date and time the document was created |
| Date/Time Last Modified | Date and time the document was last modified |
| LastSavedBy | Last saved or modified by property of a document, representing the last user to save the document |
| From | Name (when available) and email address of the sender of an email message |

---

[3] **All Custodians**, a field that identifies all custodians of a document, shall be provided when the producing party incorporates deduplication in their production workflow.

Exhibit A – Page 3

| Field Name | Description |
|---|---|
| **To** | Name (when available) and email address(es) of the recipient(s) of an email message |
| **CC** | The name(s) (when available) and email address(es) of the recipient(s) of the CC or Carbon Copy of an email message |
| **BCC** | The name(s) (when available) and email address(es) of the recipient(s) of the BCC or Blind Carbon Copy of an email message |
| **EmailSubject** | Subject of an email message |
| **Date/TimeReceived** | Date and time an email message was received |
| **Date/Time Sent** | Date and time an email message was sent |
| **EmailFolder** | Folder in which an email was stored within a custodian's mailbox |
| **AttachmentList** | File names for all attachments to an email message or child items in a family group |
| **AttachCount** | Number of files attached to an email message or parent document |